## Mary Anderson
### v.
## Andrew Anderson.

*Separate Maintenance—Conduct of Parties—Complainant Not Free from Fault.*

If a complainant in a bill for separate maintenance is guilty of misconduct,which materially contributed to produce the conditions of which she complains as justifying the separation, then she is not without fault within the meaning of the statute, and is not entitled to a decree.

[Opinion filed December 12, 1892.]

In error to the Circuit Court of Bureau County; the Hon. Dorrance Dibell, Judge, presiding.

Messrs. T. F. Clover and Eckles & Kyle, for plaintiff in error.

Mr. Richard M. Skinner, for defendant in error.

Mr. Justice Cartwright. The parties to this suit were married in February, 1877. It was a second experience in the marital relation for each of them. Both were of mature years and had children of their previous marriages, and there was a child born of this marriage. Soon after this marriage, difficulties arose between them, and continued with such frequency, that their home was very often a scene of dissension and strife. On three different occasions the wife left her husband, intending to remain away from him, but through the intervention of friends, she twice returned. The last time that she left him was in January, 1890; soon after which time she filed the bill in this case for separate maintenance, alleging that he had used personal violence toward her on several occasions, and that by abusive epithets and aggravating conduct, her life was rendered so miserable that she was obliged to leave him. An answer

was filed, denying all charges of misconduct contained in the bill. Replication being filed, the cause was heard and the witnesses were examined orally before the court, and the bill was dismissed at her cost for want of equity.

The evidence shows that during the time they lived together they were quarreling pretty continuously for several years before the final separation. Almost any subject seems to have been sufficient to afford a theme, and almost any remark a pretext for dispute. They seem to have been disposed to annoy each other. He was determined that all the household affairs should be regulated by him. He testified that he knew how to run the kitchen, how to make the coffee and fry the meat, and that he wanted things done according to his plan. He wanted to manage and give directions concerning the churning, cooking and other domestic affairs, and claimed that right of control and dictatorship which is characteristic of the petty tyrant. The first occasion of her leaving him was when she had gone from home to spend the fourth of July, and as he testified he " gave her orders to come home early." His orders were not carefully observed, and there was much trouble in consequence. He took a petty revenge by selling their buggy, on account of something that he claimed that she had said about him.

While the husband was tyrannical, the wife was quarrelsome, and took part with much vigor in the domestic warfare. He was a wealthy farmer, and sent a wagon to bring her twelve miles, without a suitable seat, so that she was compelled to ride that distance on a board. She reproached him and he said that his first wife would go to church on a board and it was good enough, whereupon she threw hot coffee on him. He allowed pigs and calves to run in the front yard and destroy the sod and flowers, to her annoyance; and when he finally built a fence he made it without a gate to reach the wood pile, so as to compel her and her assistant to climb the fence to get wood. She took an axe and made kindling wood of his fence in short order. She had an ungoverned tongue, which she used with great free-

dom. She was given to much scolding and thereby provoked quarrels. She would indulge in uncalled-for and unbecoming contradiction, as on one occasion when he was saying that he had some evidence that angels communicated with human beings, and stated that his dying daughter called attention to the appearance of angels in the room, when his wife contradicted him and said that he lied about what the dying daughter said. The final separation occurred at a time when he had invited a minister to the house, whereat she was very angry without any justifiable cause, and her conduct was very discourteous. In the morning after the minister had spent the night there, she provoked a quarrel by a remark concerning him, and she testified that her husband then slapped her face. The husband testified that she was assaulting him with a broomstick drawn over his head, and that he swung her away with his hand in self-defense. The minister arose and dressed himself, partly out of doors, and left, and she also left the premises. The above occurrences are fair samples of the difficulties of these parties. She testified to other acts of personal violence occurring long before the separation, but they were specifically denied, and, in our judgment, are not proven.

It is contended on the part of plaintiff in error that the separation which resulted from these causes was without her fault, and that she is therefore entitled to separate maintenance. The law did not require perfection on her part, nor that she should be so entirely blameless that her conduct under irritating and aggravating conditions should be wholly free from just criticism, but if she was guilty of misconduct which materially contributed to produce the conditions that she complains of as justifying the separation, then she was not without fault within the meaning of the statute. We think the evidence fully justified the Circuit Court in the conclusion that she did, by continuous scolding and quarreling, materially contribute to the unhappy condition existing in her home, which she relies upon to justify her in leaving it. The conduct of defendant in error would doubtless be very trying to any woman, however reasonable and well-

disposed she might be, and it would excuse much irritation and justify much resistance on the part of plaintiff in error, but the evidence shows that she was unreasonably contentious and often provoked him to quarrels which would not otherwise have occurred. We think that under these circumstances she could have no decree for separate maintenance.

A motion was made by plaintiff in error in the Circuit Court for an allowance to enable her to prosecute an appeal to this court. The motion was denied, and this is assigned as error. She had the judgment of that court upon the evidence produced, that her bill was without equity. We concur in that conclusion. The motion for an allowance to enable her to prosecute an appeal was properly denied.

The decree will be affirmed.

*Decree affirmed.*